IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL

TFF, INC. V. ST. ELLEN 100

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TFF, INC., A NEBRASKA CORPORATION, DOING BUSINESS AS TFF CONSTRUCTION, APPELLANT,
V.
ST. ELLEN 100 LLC, A NEBRASKA LIMITED LIABILITY COMPANY, ET AL., APPELLEES.

Filed July 15, 2014.    No. A-13-595.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed.

Brian T. McKernan and Noah M. Priluck, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellant.

Lindsay K. Lundholm, of Baird Holm, L.L.P., for appellees.

MOORE, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

### INTRODUCTION

TFF, Inc., appeals from the order of the district court for Douglas County denying its request to pierce the corporate veil of St. Ellen 100 LLC and hold St. Ellen Group, Inc., and Aaron Bilyeu liable for unpaid debts incurred by St. Ellen 100. TFF also challenges the district court's reliance on portions of the testimonies of certain witnesses. Finding no merit to TFF's arguments on appeal, we affirm.

### BACKGROUND

Bilyeu is a licensed architect who has performed both architecture and real estate development work. He formed St. Ellen Group in 2005 for the purpose of real estate development, leasing, sales, and architecture work. He is the sole shareholder and owner of St. Ellen Group.

In June 2006, Bilyeu and Joe Frost formed St. Ellen 100 for the purpose of buying a property located at 8812 Westover Road in Omaha, Nebraska, renovating the property, and selling it for a profit. This process is known as "flipping" a house. According to Bilyeu, he and Frost each contributed $5,000 to the formation of St. Ellen 100. St. Ellen 100 was also approved for a line of credit from Enterprise Bank for $485,000 to pay the expenses associated with the property renovations. The Westover Road property was purchased for $225,000, and Bilyeu estimated that the home could be sold for $650,000 once the renovations were completed. His intention in undertaking the project was to sell the property, pay off all of the expenses associated with the project, and earn a profit for himself and Frost.

St. Ellen 100 hired St. Ellen Group to act as the project manager for a fee of $18,000. This fee was disclosed on the business plan submitted to Enterprise Bank, and Matt Moyer, then president and chief executive officer of the bank, testified that this amount appeared to be reasonable. St. Ellen 100 then hired TFF to perform the construction work on the property. The project began in early 2007 and was to be completed by July 2007. Due to unforeseen delays, however, the renovations were not actually completed until December 2007. At that point, Bilyeu executed a listing agreement to sell the home for $650,000; however, unbeknownst to him, Frost entered into a 6-month lease agreement to rent the home. St. Ellen 100 fell behind on payments to TFF, leaving a balance due of $132,146.61. St. Ellen 100 also fell behind on payments to Enterprise Bank, and ultimately, the bank foreclosed on the property in December 2008.

TFF filed an amended complaint against St. Ellen 100, St. Ellen Group, and Bilyeu on April 1, 2009, alleging that St. Ellen 100 breached the contract with TFF and that the court should pierce the corporate veil of St. Ellen 100 to hold St. Ellen Group and Bilyeu liable. After trial, the district court entered an order finding in favor of TFF on the breach of contract claim against St. Ellen 100. However, the district court determined that TFF failed to meet its burden to show that St. Ellen 100's corporate identity should be disregarded, and therefore, the court dismissed the claims against St. Ellen Group and Bilyeu, individually. TFF timely appeals.

## ASSIGNMENTS OF ERROR

TFF assigns that the district court erred in (1) dismissing the claim against Bilyeu, (2) not piercing the corporate veil of St. Ellen 100, and (3) relying on portions of the testimonies of Moyer and Bilyeu as expert witnesses.

## STANDARD OF REVIEW

Proceedings seeking disregard of a corporate entity, that is, piercing the corporate veil to impose liability on a shareholder for a corporation's debt or other obligation, are equitable actions. *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. *Id*. Where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014).

ANALYSIS

*Claim Against Bilyeu and*
*Piercing Corporate Veil.*

TFF argues that the district court erred in refusing to pierce the corporate veil of St. Ellen 100 and dismissing the claim against Bilyeu. We note that St. Ellen 100 is a limited liability company, not a corporation; however, many of the same general principles apply in determining whether an individual can be held liable for a debt of the entity. Individual members of a limited liability company are generally not held liable for a debt or obligation of the company, just as shareholders and officers are not, as a general rule, liable for the debts and obligations of the corporation. See, *Thomas & Thomas Court Reporters v. Switzer*, 283 Neb. 19, 810 N.W.2d 677 (2012); *Christian v. Smith, supra*. A court will disregard a corporation's identity only where the company has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another. *Thomas & Thomas Court Reporters v. Switzer, supra*. A company's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears. *Id*.

A plaintiff seeking to pierce the corporate veil must allege and prove that the company was under the actual control of the member and that the member exercised such control to commit a fraud or other wrong in contravention of the plaintiff's rights. *Christian v. Smith, supra*. A plaintiff seeking to impose liability for a company debt on a member has the burden to show by a preponderance of the evidence that the company identity must be disregarded to prevent fraud or injustice to the plaintiff. *Id*.

Some of the relevant factors in determining whether to disregard the company entity on the basis of fraud are (1) grossly inadequate capitalization, (2) insolvency of the debtor company at the time the debt is incurred, (3) diversion by the member or members of company funds or assets to their own or other improper uses, and (4) the fact that the company is a mere facade for the personal dealings of the member and that the operations of the company are carried on by the member in disregard of the company entity. *Id*.

The first element of the test, inadequate capitalization, means capitalization very small in relation to the nature of the business of the company and the risks entailed. *Id*. Inadequate capitalization is measured at the time of organization. *Id*. A company which was adequately capitalized when formed but which has suffered losses is not necessarily undercapitalized. *Id*. Undercapitalization presents a question of fact that turns on the nature of the business of the particular company. *Id*.

In the present case, St. Ellen 100 filed its articles of organization on June 22, 2006, and therefore, we determine the amount of capitalization as of that date. Bilyeu claimed that he contributed $5,000 of capital to St. Ellen 100 at the time of formation, and Frost did as well. The district court noted that there was no evidence to corroborate Bilyeu's testimony regarding these contributions but there was also no evidence presented to the contrary. Although we review factual questions de novo, we recognize and consider that the district court observed Bilyeu's testimony regarding the contributions from him and Frost and found it to be credible.

In addition, St. Ellen 100 was approved for the $485,000 line of credit from Enterprise Bank in May 2006. It was this line of credit that was used throughout the project to pay TFF. If

we consider the line of credit to be capital, St. Ellen 100 was sufficiently capitalized at the time of its formation. If we do not consider the line of credit to be capital, we must still consider the other factors pertinent to piercing the company veil. St. Ellen 100 was created solely for the purpose of purchasing the Westover property, renovating it, and selling it for a profit. Thus, the nature of the house "flipping" business often involves similar circumstances as those in this case wherein a company receives financing from a bank in order to purchase a property and "flip" it. Consequently, regardless of whether the line of credit is considered capital, it was through this financing that St. Ellen 100 was able to pay its expenses as they came due.

The second factor used to determine whether a company's identity should be disregarded is whether the company was insolvent at the time the debt was incurred. *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008). A company is insolvent if it is unable to pay its debts as they become due in the usual course of its business or if it has an excess of liabilities of the company over its assets at a fair valuation. *Id*. Whether a company is insolvent is usually a question of fact. *Id*.

In this case, at the time St. Ellen 100 entered into the contract with TFF, it had funds available to pay TFF through the line of credit. The evidence establishes that St. Ellen 100 initially paid TFF's invoices but fell behind after September 2007 and failed to pay the remaining balance. The original plan was to have the renovations completed in July 2007 and sell the property, which would have allowed St. Ellen 100 to pay all of its debts. Ultimately, because St. Ellen 100 never sold the property, Enterprise Bank foreclosed on the home in order to satisfy the outstanding balance on the line of credit.

The district court, in considering the initial contributions by Bilyeu and Frost, the line of credit used to pay TFF, the business plan approved by Enterprise Bank, the testimony of Moyer, the intentions of the parties, and the nature of the business, concluded that there was insufficient evidence to show that St. Ellen 100 was insolvent. We agree with this conclusion and find that the fact that St. Ellen 100 was unable to pay all of its debts was not the result of insolvency at the time of the contract, but, rather, the result of a failed business venture.

The third factor of the test to determine whether the company veil should be pierced is evidence of a diversion by the member or members of company funds or assets to their own or other improper uses. When a member appropriates and uses corporate funds and property for his personal purposes and thereby defrauds and causes damages to creditors, the member can be held individually liable for corporate debt. *Id*.

There was no evidence adduced at trial to show that Bilyeu diverted funds from St. Ellen 100 for his personal purposes or improper uses. Bilyeu testified that St. Ellen 100 paid St. Ellen Group for project management fees and that he was paid through "distributions" from St. Ellen Group. The project management fee was included in the business proposal presented to Enterprise Bank, and Moyer testified that he knew of the fee and considered it to be reasonable. As such, there is no evidence to show that Bilyeu diverted funds from St. Ellen 100 for his personal use or other improper uses.

We turn now to the fourth prong of the test. If the company is a facade for the personal dealings of the member and the operations of the company are carried on by the member in disregard of the company entity, the member may be individually liable for company debt. *Id*. The separate entity concept of the limited liability company may be disregarded where the

company is a mere shell, serving no legitimate business purpose, and is used as an intermediary to perpetuate fraud on the creditors. *Id.*

In this case, Bilyeu testified that he and Frost formed St. Ellen 100 for the purpose of renovating the Westover property and selling it for a profit. He said that his intention was to pay all of the debts associated with the project and earn a profit. However, due to delays in completing the renovation and changes in the housing market, St. Ellen 100 was unable to achieve its goal. But this, in itself, is insufficient to show that St. Ellen 100 was a mere shell to perpetrate fraud. St. Ellen 100 was created for a legitimate business purpose, despite the fact that the business was ultimately unsuccessful, and there was no evidence of an intention to perpetuate fraud or injustice on TFF.

Upon our de novo review, after reviewing all of the factors applicable to piercing the company veil, we conclude that the district court did not err in refusing to hold Bilyeu and St. Ellen Group liable for the debts of St. Ellen 100. Accordingly, we find no error in dismissing Bilyeu from the suit as a defendant.

*Expert Witnesses.*

TFF argues that the district court erred in relying on portions of the testimonies of Moyer and Bilyeu as expert witnesses. In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013). In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Id.*

Neb. Rev. Stat. § 27-702 (Reissue 2008) governs the admissibility of expert testimony and provides that the witness must be qualified as an expert, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Under § 27-702, a trial court does not have discretion to permit a witness who has not been qualified as an expert to testify to issues that require an expert's opinion. *Simon v. Drake, supra.* If a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue. Neb. Rev. Stat. § 27-701 (Reissue 2008).

We have reviewed the testimony to which TFF objected at trial on the grounds that it called for an expert opinion, and we find no error in the district court's overruling those objections and relying on the testimony. Bilyeu was asked several questions based on his own experiences in the house "flipping" business or real estate industry. This is proper lay testimony under § 27-701. Similarly, Moyer was questioned regarding Enterprise Bank's practices and procedures and his observation of the real estate market changes in 2008. Because the testimony provided was based on the witnesses' own perceptions and was helpful to the trier of fact, it was properly admitted under § 27-701. Even to the extent any of the testimony could be considered expert testimony, in a civil case, the admission or exclusion of evidence is not reversible error

unless it unfairly prejudiced a substantial right of the complaining party. See *Simon v. Drake, supra*. Since none of this testimony affects whether the court erred in refusing to pierce the corporate veil, we find it was not unfairly prejudicial.

## CONCLUSION

Based upon our de novo review, we find that the district court did not err in refusing to pierce the company veil of St. Ellen 100 and dismissing the claim against Bilyeu. We also find no error in the court's reliance on Bilyeu's and Moyer's testimonies. Accordingly, we affirm the decision of the district court.

AFFIRMED.